846 So.2d 544 (2003)
K.H., Appellant,
v.
DEPARTMENT OF CHILDREN & FAMILY SERVICES, et al., Appellees.
No. 3D01-2113.
District Court of Appeal of Florida, Third District.
March 26, 2003.
Rehearing and/or Clarification Denied June 4, 2003.
*545 Albert W. Guffanti, Miami, for appellant.
Calianne P. Lantz; Mercedes E. Scopetta, for appellees.
Before JORGENSON, GERSTEN, and RAMIREZ, JJ.
JORGENSON, Judge.
K.H., [the father] appeals from an order terminating his parental rights. For the reasons that follow, we reverse.
Through these proceedings, a family that had absolutely no connection to the State of Florida was divested of three children, the youngest of whom was still a breast-feeding infant at the time. That child was later returned to the parents.
*546 The other two children have remained in foster care since 1997, since they were seized by the Florida Department of Children and Family Services [DCF] at Miami International Airport as the family was in transit from Brazil to Washington, D.C.
The father, who was from Trinidad, was living in Brazil with his wife, who was an employee of the United States Department of State posted in Brazil. His wife is not the mother of the children who are the subject of this order.[1] In 1997, while in Brazil, the father disciplined his daughter by striking her on the buttocks repeatedly with a wooden stick, causing her injury and leaving bruises and abrasions. The act, which he has never denied, took place on property belonging to the U.S. embassy in Brazil. The State Department's Diplomatic Security Service was contacted about this incident after the daughter's school noticed the injuries and became concerned. The State Department began an investigation and notified the Miami bureau that the family could be intercepted en route from Brazil to Washington, D.C., where they had been summoned, and where they resided. The State Department apparently believed that the family planned to abscond to Trinidad. When the family arrived at Miami International Airport, they were detained by the State Department; all three children were taken into custody by a DCF child protection team. The father was jailed for seven months on charges stemming from the alleged abuse. The children were placed in foster care in Broward County.
Although the children were removed in 1997, a case plan was not presented until March of 1999.[2] What appears in the record (r.58) is captioned "Addendum to Case Plan" and is dated "this __ day of March, 1999." It was not signed by then-presiding judge, who is not the judge who signed the termination order. To further confuse matters, the Index to the Record lists the filing date of that "Addendum" as January 28, 1999. Another document, filed April 14, 1999, entitled "Permanency Planning Case Plan" is for the most part blank.
The father's degree of participation in this proceeding is far from commendable, even taking into account the distances involved and the difficulties of trying to regain custody of his children in Florida from his home in Virginia. He failed to attend numerous hearings over the years, even by telephone, and claims that he could not afford to travel to Florida. His requests for change of venue and for travel expenses were repeatedly denied. Counsel's ore tenus motion to dismiss for lack of jurisdiction was denied as untimely by the initial presiding judge.
On April 12, 2002, the father's parental rights were terminated as to his two children. We reverse, as the record does not establish by clear and convincing evidence that the father's parental rights should be terminated.[3]
We agree with the father that this case raises serious concerns over jurisdiction, as the family had no ties to the State of Florida and was merely in transit when the children were seized at Miami International Airport. However, "[t]he Circuit Court shall have exclusive original jurisdiction of all proceedings [under] this chapter.... Jurisdiction attaches when ... a *547 child is taken into the custody of the Department." § 39.40(2), Fla. Stat. (1997). Furthermore, the Uniform Child Custody Jurisdiction and Enforcement Act [UCCJA], which applies to dependency proceedings, see § 61.503(4), Fla. Stat. (2002), provides that "a court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child ... is subjected to or threatened with mistreatment or abuse." § 61.517(1), Fla. Stat. No proceedings concerning these children were brought in Virginia. Therefore the Circuit Court appears to have had jurisdiction over this proceeding, although the manner in which the children were seized appears to have been calculated to create jurisdiction in Florida and is problematic, to say the least.
We reject the father's argument that the entire matter should have been transferred to Virginia, where he and his wife reside. There is no venue privilege in dependency proceedings; Chapter 39 does not even address venue. General venue considerations do not apply, as "a dependency action is not a `cause of action'" under any definition, and general venue considerations may not comport with the best interests of the child. See D.M. v. J.D.M., 814 So.2d 1112, 1115 (Fla. 4th DCA 2002). Florida Rule of Juvenile Procedure 8.205(c) provides that a dependency court may transfer the case to another state "if an action is pending in another state." No such action was pending in Virginia. Therefore, the trial court properly denied the father's motions to transfer the case to Virginia.
We conclude that the trial court had jurisdiction over this matter and venue was proper in Dade County. However, we reverse the order on the ground that it is not supported by clear and convincing evidence.
A parent's right to the care, custody, and companionship of his children is a fundamental liberty interest. See Padgett v. Dep't of Health & Rehab. Servs., 577 So.2d 565 (Fla.1991). When that interest is at stake, DCF must prove the allegations supporting the termination of parental rights by clear and convincing evidence and must establish that termination of these rights is the least restrictive means of protecting the child from serious harm. Id. at 571.
Because such fundamental rights are at stake, the agency "ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan." Id. In this case, reunification of the family was originally the stated goal. However, the confusion surrounding the case plan(s), coupled with the outrageous, nearly two-year delay in providing that plan made it difficult if not impossible for the father to comply with DCF's requirements. Furthermore, there is no report in the record from any expert or from the guardian ad litem after the Adjudicatory Order of Dependency, dated April 14, 1999. In short, there is no record evidence to support the order of termination, as opposed to the order of dependency.
This case presents yet another unfortunate failure of the Department of Children and Families and the court system to fulfill their statutory duties to the children and the family. We are painfully aware that nearly six years have passed since the two children were removed from their father's custody. The passage of time, the attachments those children may have formed with their foster family, and the father's sporadic visitation over the yearsthe blame for which falls equally on him and *548 on DCFmake the once-stated goal of reunification seemingly impossible. Nevertheless, the order terminating his parental rights cannot stand on this record.
We reverse the order and remand this matter to the trial court for further proceedings consistent with this opinion.[4]
NOTES
[1] The whereabouts and status of the biological mother of the two children who are the subject of this order is not clear from the record. She is not a party to this proceeding.
[2] Florida Statutes mandate that "the case plan must be prepared within 30 days after placement." Fla. Stat. § 39.4031(4) (1997).
[3] No appeal was taken from the adjudication of dependency.
[4] Should DCF again seek to terminate the father's parental rights, we caution him to make whatever arrangements are necessary to be present at all proceedings.